UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-575-H

JUDITH DONAWAY, et al.                                                                                        PLAINTIFFS

V.

ROHM AND HAAS COMPANY,
LOUISVILLE PLANT                                                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

On April 20, 2009, Plaintiffs and Defendant Rohm and Haas Company, Louisville Plant ("R&H") (hereinafter the Plaintiffs and R&H are collectively referred to as "Parties"), appeared before the Court for a fairness hearing on their Joint Motion for Preliminary Approval of Class Action. After hearing extensive testimony and allowing all potential class members additional time to respond or object, the Court is now ready to consider the fairness of the proposed class settlement(the "Proposed Class Settlement").

This case is one of seven (7) class action lawsuits brought against chemical manufacturing or electrical generating facilities located in the southwest Jefferson County area.[1]

---

[1] The same lead counsel represents each proposed class of plaintiffs in each case. Each case involves similar and sometimes related factual allegations and similar causes of action. None of these cases can be considered entirely in isolation from the others. These cases are in various stages of litigation: the Court approved settlement of *Humphrey, et al. v. Hexion Specialty Chem.* (06-CV-276-H) in August 2007; the Court is entering today a similar Memorandum Opinion and Order in *Bell, et al. v. DuPont Dow Elastomers, LLC, et al.* (07-CV-581-H); the Court has denied motions for class certification in *Burkhead, et al. v. E.ON U.S. LLC, et al.* (06-CV-282-H) and in *Cox, et al. v. American Synthetic Rubber* (06-CV-422-H); *Cochran, et al. v. Oxy Vinyls* (06-CV-364-H), where the Court is sustaining a motion for summary judgment on all claims; and *Cochran, et al. v. Zeon GP* (06-CV-363-H) where the Court today is also denying a motion to approve the proposed settlement. Counsel has also filed, *Brockman, et al. v. Barton Brands* (06-CV-322-H), which is a similar case, but the plaintiff class is located in Bardstown, Kentucky. The Court has denied a motion for class certification in that case.

The Proposed Class Settlement raises several difficult substantive and procedural issues. This Memorandum Opinion explains the Court's views and its way forward. The Court will approve the Proposed Class Settlement, with the exception of the injunctive provisions that purport to apply to non-parties. Because this provision only burdens current and future residents and benefits R&H, the Court will allow R&H thirty (30) days to decide whether to accept the class settlement as amended. If accepted, the Court will enter the order attached as Exhibit "A."[2]

I.

Plaintiffs filed this case on November 9, 2006, seeking damages for nuisance, negligence and/or gross negligence, trespass, and strict liability related to R&H's operation of a chemical manufacturing facility located at 4300 Camp Ground Road, Louisville, Kentucky. After a period of arm's-length negotiations, the Parties have reach a compromise settlement of this lawsuit.

Defendant R&H owns and operates a chemical manufacturing facility located at 4300 Campground Road in Louisville, Kentucky (the "R&H Facility"). R&H, as part of its normal business operations, utilizes the following chemicals: 1,3 Butadiene, Acrylic Acid, Acrylonitrile, Ammonia, Butyl Acrylate, Ethyl Acrylate, Ethyl Benzene, Ethylene Glycol, Formaldehyde, Methanol, Methyl Acrylate, Methyl Methacrylate, N-Butyl Alcohol, Styrene, Tert-Butyl Alcohol, Toluene, and Xylene.

Plaintiffs are residents of the neighborhoods located adjacent to and nearby the R&H Facility. The proposed class encompasses all lawful residents and owners of property within approximately a two-mile radius of the R&H Facility. Plaintiffs' complaint alleged interference

---

[2] The Proposed Class Settlement in this case is very similar to that in *Bell v. DuPont* (07-CV-581-H). The evidence is similar; the Class Areas are virtually identical. Therefore, the two Memorandum Opinions issued today follow the same approach and the language in each is virtually identical.

with the use and enjoyment of their property as well as diminution in property values due to air emissions from the R&H Facility. Plaintiffs allege that the R&H Facility emitted unpleasant odors, air contaminants and fallout that caused Plaintiffs to remain indoors and not be able to enjoy their homes. Plaintiffs also allege that they have suffered personal injuries and adverse health effects including nausea, headaches, and respiratory problems. Plaintiffs' complaint sought an award of money damages to compensate them for their injuries.

R&H has announced the cessation of certain processes at the R&H Facility during 2009, including but not limited to, the complete shutdown of its Emulsions Process, and the partial shutdown of its Plastics Additive Process, which would dramatically reduce the air emissions from the R&H Facility in the years after 2009. The Plastics Additive Process is currently the only industrial operation at the R&H Facility that requires the use or storage of butadiene, which use will be either eliminated or dramatically curtailed by the above described shutdown. All tanks and buildings that were involved with the processes that will be shutdown will be decommissioned or demolished.

For purposes of settlement, the Parties agree that class certification is appropriate because: (i) the Class is so numerous, encompassing all lawful residents and property owners in an approximately 2-mile radius of the R&H Facility that separate joinder of each member is impracticable; (ii) the claims and defenses of the class representatives raise questions of law and fact that are common to those that could be raised by individual members of the class; (iii) the claims of the class representatives are typical of the claims of each member of the class; and (iv) the class representatives fairly and adequately protect and represent the interest o each member of the class. *See* Fed. R. Civ. P. 23(a).

The Proposed Class Settlement, which is virtually identical to that in *Bell, et al. v. DuPont Dow Elastomers, LLC, et al.* (07-CV-581-H), provides that (1) Defendant shall pay a total of $700,000 to settle all class claims, (2) Plaintiffs' counsel shall apply to the Court for attorney's fees and costs, (3) the amounts remaining, after administrative costs, along with amounts from the DuPont settlement, shall be deposited to the Rubbertown-Shively Class Scholarship Fund, which shall be used to fund post-high school education scholarship for residents of the class areas, (4) any potential class member could opt-out of the settlement under its provisions, (5) class members grant broad releases to R&H based on past and future conduct, but are not barred from bringing actions for personal injury that could not have been brought prior to the Proposed Class Settlement or based upon different manufacturing process or a catastrophic release, and (6) the class members and future residents of the class area are enjoined from bringing certain types of future claims.

At the Fairness Hearing, several potential class members testified that the notice to class members was inadequate, that some members did not understand the notice, and the settlement amount was inadequate. Some prospective class members objected on the grounds that the settlement money was being put into a scholarship fund, instead of being distributed to the class members. The Court allowed additional time for potential class members to respond or object. Thereafter, several more articles appeared in the *Courier Journal*, describing the proceedings and publishing the information telephone number in bold type. Counsel for the objectors held several informational meetings as well.

## II.

A district court has broad discretion to certify a class. *Mayer v. Mylod*, 988 F.2d 635, 640

(6th Cir. 1993). Though the Court's discretion is broad, it must be exercised with great care. Courts should be especially mindful when approving class certification for the purposes of settlement. *UAW v. General Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

The Proposed Class Settlement includes injunctive relief and the creation of a common fund, from which class counsel will seek an award of attorney's fees. Here the parties did not include attorney's fees as part of their settlement. Had they done so, the Court would need to determine whether the settlement, including attorney's fees, was reasonable. Instead, the Court looks only at the settlement terms to determine reasonableness.[3] If it is, the Court will then consider the reasonableness of the attorney's fees from the common fund. The Court will review each of the Rule 23 factors in turn.

The Class consists of hundreds of persons who have similarly suffered from odors, fallout particulate and air contaminants, as alleged in the Complaint. The Class is ascertainable because all of its members reside within a certain geographic radius surrounding the R&H Facility. It consists of persons residing at approximately 6,421 residential locations, making it sufficiently numerous, so that joinder is impracticable. In other words, the Class meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

The Class also can meet the commonality requirement, contained in Fed. R. Civ. P. 23(a)(2), because all of its members share at least one common factual or legal issue. Here,

---

[3] In response to a rejected settlement, the parties may either renegotiate a settlement which gains the Court's approval or proceed with litigation, which in this instance may involve additional discovery, motions for class certification or dispositive motions by either side. Typically, one cannot immediately appeal the denial of a motion to approve a class settlement. While such an appeal is possible in a narrow set of circumstances, it would not be possible here. *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981). However, an objector may appeal the final order approving a class action settlement.

Plaintiffs have alleged that "Defendant's chemical discharges have invaded and caused substantial damage to, substantial loss of use of, and substantial interference with Plaintiffs and Plaintiffs' properties." Whatever the source of the problem, the class members present complaints with many similarities and no material differences. All have claimed some level of nuisance, discomfort, or irritation. Consequently, these common questions of law and fact meet the commonality requirement of Fed. R. Civ. P. 23(a)(2). The Court finds that the claims of the class representatives are typical of others in the Class, satisfying the typicality requirement of Fed. R. Civ. P. 23(a)(3).

The class members have similar complaints, and the Court finds that their representative will fairly and adequately protect the class interests. More specifically, the named Plaintiffs allege claims consistent with those of the Class, appear to have no inherent conflicts with it, and appear to have actively participated in both the prosecution of, and the negotiations to settle, this lawsuit. Finally, their able counsel are experienced in preparing and prosecuting large, complicated class actions, particularly those involving environment emissions claims.

The Court also finds that the common issues of fact and law predominate over any individual issues, making certification of this settlement class appropriate under Fed. R. Civ. P. 23(b)(3). To be sure, some class members disagree about the significance of the discharges each has experienced. As presented at the Fairness Hearing, the proposed resolution would not involve individual issues that would predominate. The environmental impact from the odors, particulate and air contamination affected Plaintiffs and their properties in similar ways under the law. The difficulties each faces in proving their case are also similar.

III.

The question remains whether the form and substance of the Proposed Class Settlement is fair to the entire class. In this section, the Court will examine four primary objections: (1) the adequacy of the notice, (2) the adequacy of the settlement amount, (3) the fairness of the release and opt-out provisions, and (4) the propriety of aggregating the settlement amounts with an area scholarship fund.

In deciding whether to approve such settlements, courts have recognized a strong public interest in favor of settlements, particularly in class action suits. *See Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Therefore, courts should approve a class action settlement that is "fair, adequate, and reasonable" and not the product of collusion between the parties. *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986). Although the Court is free to consider any relevant factors in weighing the reasonableness of the settlement, a reviewing court should not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff might have received in a fully litigated case. *See United States v. Trucking Employers, Inc.*, 561 F.2d 313, 317 (D.C. Cir. 1977). As the Sixth Circuit has held, a class action settlement "is a compromise which is reached by the parties after they have made an assessment of the risks, expenses and delay of further litigation." *Lindsey v. Memphis-Shelby County Airport Auth.*, 2000 WL 1182446, at *5-6 (6th Cir. 2000). A district court must assess the reasonableness of a compromise after examining the evidence presented and the terms of the settlement. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). Even when taking a close look at a settlement, a court cannot modify the

terms of the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). As the Fifth Circuit aptly put it, "[t]he settlement must stand or fall as a whole." *Cotton*, 559 F.2d at 1332.

A.

The Court first turns to the reasonableness of the notice. Notice of the hearing approved by the Court was mailed to all residents and property owners reasonably identifiable, in an approximately two-mile radius of the R&H Facility as more fully described in the Settlement Agreement. A Short Form Notice of the hearing approved by the Court was also published in the *Louisville Courier-Journal* pursuant to the specifications of the Court. In addition, a notice of the hearing approved by the Court was posted on bulletin boards at designated locations within the Class Area. Before the opt out deadline, Plaintiffs' counsel received one-hundred and ninety-five (195) valid requests for exclusion, or about 3 percent of the total possible class participation.

B.

The settlement amount reflects the significant risk each side faces, but particularly Plaintiffs in this case. Plaintiffs' only realistic claim sounds in nuisance. Under Kentucky law, nuisances are the "'class of wrongs which arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage.'" *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950) (quoting 39 Am. Jur., Nuisances, Section 2). Kentucky codified the common law of nuisance by statute in KRS §§ 411.500-411.570. Section 411.550 sets out factors that a trier of fact should consider when determining whether a use

8

constitutes a nuisance.[4] Finding of a nuisance involves a weighing of the costs and benefits of the use in question. Thus, even if Plaintiffs are absolutely correct in everything they have alleged concerning Defendant's use, a trier of fact could still conclude that it did not constitute a nuisance.

1.

Several other difficulties stand in the way of a successful result. This record contains no evidence of a connection between the known emissions from the R&H Facility and the odors and nuisances alleged in the complaint. Without expert testimony tying these two conditions, a jury would find it difficult to separate the odors or alleged nuisances which emanate from various sources near the class area. By statute, in a nuisance claim, "[n]o damages shall be awarded for annoyance, discomfort, sickness, emotional distress, or similar claims for a private nuisance," rather the plaintiff must prove liability and damages "independent of whether defendant's use of property is found to constitute a nuisance." KRS § 411.560(3). At this point, Plaintiffs have not tendered any reliable evidence of lost property value related to a nuisance. The Court cannot

---

[4] 1) In determining whether a defendant's use of property constitutes a private nuisance, the judge or jury, whichever is the trier of fact, shall consider all relevant facts and circumstances including the following:
    (a) The lawful nature of the defendant's use of the property;
    (b) The manner in which the defendant has used the property;
    (c) The importance of the defendant's use of the property to the community;
    (d) The influence of the defendant's use of property to the growth and prosperity of the community;
    (e) The kind, volume, and duration of the annoyance or interference with the use and enjoyment of claimant's property caused by the defendant's use of property;
    (f) The respective situations of the defendant and claimant; and
    (g) The character of the area in which the defendant's property is located, including, but not limited to, all applicable statutes, laws, or regulations.

(2) A defendant's use of property shall be considered as a substantial annoyance or interference with the use and enjoyment of a claimant's property if it would substantially annoy or interfere with the use and enjoyment of property by a person of ordinary health and normal sensitivities.

KRS § 411.550.

assume that such evidence is readily available.

Plaintiffs' personal injury negligence claims would also be difficult to prove. To make such a claim, one must show that R&H breached a legal duty. Because R&H appears to have complied with all federal and state environmental statutes, proving the violation will be quite difficult. Also, Plaintiffs must show some physical injury. *Wood v. Wyeth-Ayerst Labs., Div. of Amer. Home Prods.*, 82 S.W.3d 849, 853-54 (Ky. 2002) (holding that mere exposure to a potentially harmful substance does not give rise to a cause of action for personal injury). Though Plaintiffs have complained that the smell makes them ill and that they suffer physical side effects, none have produced any medical evidence of illness or injury. Therefore, the negligence claims would likely fail.

2.

To say that the Proposed Class Settlement represents a nuisance settlement does not denigrate it, but only fairly describes it. The Court should analyze it from that perspective. A nuisance settlement may well be fair, adequate, and reasonable. As Judge Posner said recently, nuisance settlements are permitted in class actions, and "defendants can be trusted to make such settlements only if it is in their best interest to do so." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 686 (7th Cir. 2008). Here, if the Defendant paid out the $700,000 settlement amount to the approximately 6,421 individual Plaintiffs, each plaintiff would receive about $109.02, less any attorney's fees. Assuming a fifth in attorney's fees, each plaintiff would receive around $87.21. These modest per capita amounts reflect both parties' recognition of the difficulty in proving the case.

In general, the strength of Plaintiffs' case stems from the acknowledgment that something

has created a noxious smell.  This smell aggravates a great number of people, who are all complaining about substantially the same problem. The weakness in Plaintiffs' case is the difficulty in determining liability and damages.  At this point in the litigation, though the result is uncertain, Plaintiffs have many obstacles to surmount.

## C.

There are substantial uncertainties which affect the potential outcome of this case and factor into the decision of any class member weighing his option to opt out.  The complexity, expense, probable duration, and risk in establishing liability and damages all weigh in favor of a determination that the Proposed Class Settlement is fair and reasonable.  Though the settlement amount is quite modest, the evidence suggests that the results at trial could be worse.  The Court concludes that by treating all class members similarly the settlement proposal presents an understandable and clear choice, making the opt-out provision fair in these circumstances.

Some class members have also raised concerns about the use of settlement funds to create a scholarship fund rather than directly compensating class members.  Arguably, the scholarship fund bears no direct relationship to the purported injuries of class members and only a subset of the class will be able to take advantage of the fund.  While this is a fair criticism, it is not determinative.  The decision to aggregate the settlement proceeds in a scholarship fund for the benefit of current and future Class Area residents, is a reasonable one.  The scholarship fund will confer a generalized benefit to the area as compensation for a generalized complaint.  For those who truly believe otherwise, the settlement allows for any party to opt out and to maintain their individual claims.

Notwithstanding this analysis, some have argued that the Proposed Class Settlement is

unfair, because class members must give up substantial rights and gain little under the proposed settlement. In particular, settling class members cannot bring additional actions based on similar complaints. However, as previously discussed, the value of these claims is not obvious. Class members do not give up causes of action for catastrophic accidents and harm resulting from a different kind of activity by Defendant, which would be stronger claims if they ever occur. Furthermore, class members do not give up any claims for personal injuries arising in the future.

Thus, the Class relinquishes certain rights, while retaining others, in exchange for the establishment of the scholarship fund. Ultimately, as in all settlements, every member must decide for himself or herself whether giving up certain claims is worth the establishment of the fund. The Proposed Class Settlement seems to be a fair choice in these respects.

D.

In view of the analysis in Sections II and III of the Memorandum Opinion, the Court reaches the following conclusions. The Court finds that settlement of this matter by the Proposed Class Settlement is superior to other available methods for a fair and efficient adjudication of this lawsuit. *See* Fed. R. Civ. P. 23(b)(3). The proposed resolution contained in the Proposed Class Settlement is particularly appropriate. The Court also notes that because this lawsuit is being settled, rather than litigated, it need not consider the manageability issues that might be present by a class action of this nature. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Though the Court finds the settlement fair and reasonable as between the Proposed Class and Defendant, another aspect of the settlement as applied to certain non-parties is unfair as the Court will discuss in Section IV.

IV.

As part of the Proposed Class Settlement, the Class Members agreed that this Court should issue an injunction as part of its final approval order. The proposed injunction contains several provisions. It bars claims from anyone within 2 miles of the R&H Facility ("the Class Area") arising from or related to air emissions for a period of five (5) years from the date of entry of the order, but does not bar claims for personal injury that could not have been asserted before December 15, 2008. Furthermore, the proposed injunction would not bar claims arising out of a catastrophic release of chemicals, defined as an un expected, accidental incident resulting in releases atypical in nature and dramatically greater in amount than historically associated with regular plant operations, nor would it bar claims related to releases from substantially different manufacturing processes that result in substantially different or greater air emissions than current or historical operations. Thus, the scope of the injunction forecloses some claims closely tied to the claims in this case for five years, while still allowing a number of future claims to go forward. In so far as the injunction would apply only to the Class, the Court finds that it is fair and reasonable within the scope of the Proposed Class Settlement.

To the extent the injunction purports to bind non-parties, however, its provisions seem quite unfair and, indeed, beyond the Court's power to enforce. An injunction may only bind: 1) parties; 2) their officers, agents, servants, employees, and attorneys; and 3) other persons who are in active concert or participation with them. Fed. R. Civ. P. 65(d)(2); *See Blackard v. Memphis Area Medical Center for Women, Inc.*, 262 F.3d 568, 574 (6th Cir. 2001). This proposition derives from the common law doctrine that an injunction "not only binds the party defendant but also those identified with them in interest, in 'privity' with them, represented by

13

them or subject to their control. *Id.* (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945). The Federal Rules of Evidence incorporates this very principle of fairness in an equitable remedy.

By its terms, the proposed injunction applies to anyone in the Class Area, even those persons or entities that come to own property or reside within the Class Area after December 15, 2008. Such an injunction goes well beyond what is allowed generally under the federal rules and the underlying common principles. Under these long-standing rules an injunction certainly cannot bind future purchasers, or current residents that are not parties to this action and not acting in concert with one who is bound by the injunction. As the Supreme Court has said, "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement." *Local No. 93 City of Cleveland*, 478 U.S. 501, 529 (1986). Accordingly, the Court will not approve or enter an injunction of this type which purports to bar the rights or action of those who are not parties to this case.

Because the injunctive provision to which the Court objects burdens only non-parties and benefits only Defendant, the Court will allow R&H an opportunity to accept the Proposed Class Settlement as amended. Such a procedure is a reasonable alterative to rejecting the entire Proposed Class Settlement unconditionally. If Defendant accepts the proposed amendment, the Court will enter the order approving it attached as Exhibit "A."

V.

The final issue for the Court's consideration is the matter of reasonable attorney's fees for which counsel has applied. For purposes of this analysis, the Court will assume that

Defendant accepts the Proposed Class Settlement as amended.

Counsel has requested attorney's fees of $233,333, to be paid from the settlement amount of $700,000. Traditionally, the rule in American courts is that each litigant is responsible for their own attorney's fees. Here, counsel seeks fees under the common fund exception to the general rule. The settlement proposed here envisions such a fund. Counsel is entitled to a reasonable fee under the circumstances.

There are two methods of calculating a reasonable fee from a common fund: the lodestar and the percentage of fund methods. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993). Counsel says that the percentage of fund method is now favored. In the Sixth Circuit, any award of attorney's fees in a common fund case must be reasonable. *Id.* at 516. Because reasonableness is the ultimate test for attorney's fees, even those courts which use the percentage of fund method must also undertake a more comprehensive analysis. There are at least six factors to consider when doing the analysis:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

Based upon these factors, counsel's claim to a one-third (1/3) fee falls quite short. The settlement is reasonable, but nevertheless it is for nuisance value. This is true despite the

reasonable decision to aggregate the amounts to create a greater benefit for area residents generally. Moreover, the litigation itself does not appear to have played any role in altering or stopping Defendant's on-going conduct or to have changed the class area environment in any noticeable way. Consequently, one cannot say that the litigation has achieved any great societal reward for the area.

Moreover, it is unclear exactly how much work counsel performed to build and prosecute this case.[5] By their choice, counsel has not submitted any hourly compilations of their time. Therefore, the Court has no way of knowing the amount of time and effort actually devoted to these cases or any related cases. The actual record does not disclose a substantial amount of work performed. The settlement here is remarkably similar to the settlement in *Bell, et al. v. DuPont Dow Elastomers, LLC, et al.* (07-CV-581-H). Indeed, counsel represented eight (8) separate but closely related groups of plaintiffs. The witnesses' expert evaluations, pleadings, and legal arguments were similar in each case, and counsel surely achieved tremendous economies of scale. The Court must be very careful about awarding excess fees where so many compensated activities are related and no time sheets are provided.

To have achieved the potential for greater success, counsel would have been required to engage in more extensive expert investigations to determine the source of emissions and to more thoroughly analyze property values. Such an investigation would have required more expenditures and may well have proved unavailing. In any event, counsel chose not to do this. The Court assumes that counsel exercised good judgment in not pursuing the matter. In either

---

[5] Counsel settled without submitting any class member for depositions, without pursuing class action certification and without filing any expert witness reports to strengthen the case.

16

event, counsel is not entitled to a large fee in each case for settling early for nominal, though reasonable amounts.

The request for close to a 33 percent fee is far too high under the circumstances. In surveying class action settlements from a variety of jurisdictions, the Court sees that common fund awards are typically in the 20-30% range, when good results are achieved. *See e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991); *Jones v. Dominion Res. Servs., Inc.*, 601 F.Supp.2d 756, 763 (S.D.W.Va. 2009). *In re Crazy Eddie Sec. Litig.*, 824 F.Supp 320, 326 (E.D.N.Y. 1993); *See also,* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2004).

Awarding attorney's fees out of the common fund, always raises concerns that class members, those who theoretically should be benefitting from the settlement, no longer have someone representing their interest. The Sixth Circuit has accurately characterized these fears:

> In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Rawlings*, 9 F.3d at 516. This echoes the findings of the Third Circuit Task Force, which succinctly described the phenomenon by saying, that in common fund settlements, class counsel's role "changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." *Court Awarded Attorney Fees*, Report of the Third Circuit

17

Task Force, 108 F.R.D. 237, 255 (1985).  As a result, the judge approving the settlement must take on the fiduciary mantle discarded by class counsel. *Id.*

The Court must act as a fiduciary for all parties, but particularly for the Class.  Counsel takes a risk by not submitting time records, even where fees come from a common fund.  Based upon the foregoing discussion, the Court is left with no evidence of substantial work or a great result to justify the requested fees.  The Court is quite confident that a total of $150,000 will compensate counsel quite fairly for their work in these two cases.  Therefore, the Court will award $75,000 in fees in this case.

As indicated previously, the provision for attorney's fees is separate from the Proposed Class Settlement which the Court has approved conditionally.  Therefore, should Defendant accept the modification to the Proposed Class Settlement discussed in Section IV, the Court will enter the award of attorney's fees attached as Exhibit "B."  Counsel retains all its right to object to or appeal the Court's decision on attorney's fees.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the joint motion to approve the Class Settlement is DENIED at this time, subject to the conditions that follow in this order.

IT IS FURTHER ORDERED that Defendant shall have to and including August 2, 2009 to agree to the Court's approval which is attached as Exhibit "A" to this Memorandum Opinion.  If the Court receives Defendant's approval, the Court will enter the attached Order and will also enter the attached Exhibit "B" awarding attorney's fees.  If Defendant does not approve, the Court will deny the motion without condition.

cc: Counsel of Record